## STATE v. JAMES DEVINNEY, WILLIAM CARSON, and WILLIAM TAYLOR.

Court of Quarter Sessions. New Castle. December 18, 1801.

*Rodney's Notes.*

*Vining, Read* [for the State]. *Vandyke, Broom, Ridgely* [for defendants].

William Taylor, one of the defendants, pleaded guilty.

William Henry Robinson (an accomplice, made State's evidence). October 19, coming from Philadelphia with Caldwell, called at Wilmington, went to Devinney's house in Wilmington. Caldwell proposed to me breaking the store. Devinney said was acquainted in New Castle; asked if I was willing to engage in the business. I told him if it could be effected I had no great objection. We came Monday night to New Castle. Devinney and Taylor said they would follow us, and there were others in New Castle they could depend on to act in breaking the store. Caldwell had some discourse with McCullough's bar keeper. About 10 o'clock I came to Dyke to meet some of them, stayed some time, and returned again not meeting Taylor and Devinney. Went into a tavern; they were going to bed. Returned to the Dyke again, remained one and a half hours, saw a man riding in on horse back. He asked if my name was Robinson; said yes. It was Taylor. Devinney came up about a half hour after, asked if I had seen Taylor. Yes. We two came in town together, met Taylor and another, *viz* William Carson, consulted sometime together about breaking the store, were agreed it was best for two to go one way, and two another. Devinney and I went down to the wharf. Taylor and Carson came another way, met us at the store, found a window open. Some casks lay by the store, were piled up to assist in entering the window. Carson went and brought a short ladder. Taylor went up on it into the window

and opened the door inside. We all went in. Devinney had a bag. Were frightened by a noise. Returned again and cut the bales, took cloth, muslins, etc. and carried them up towards the town, Carson and me took some to a stable. We intended to take more goods but it [was] drawing near daylight. To avoid suspicion I [went] to a place in the stage. I returned to Wilmington. Devinney was to give me money for my share. I was taken out in morning on suspicion by a constable, and put to jail. Harvey was with him. I remained two days in jail, was then discharged. Went to Devinney's house. Taylor came there to consult what we should do with the goods. Next day after was taken by Harvey, carried before J. Lea and Hamilton. [I] told Harvey I would disclose, etc. Was sent to New Castle. Letter wrote to James Devinney by me in jail for money, etc.

William Ruth. I found the letter on the table.

CHIEF JUSTICE BOOTH affirmed, the letter was shown me by A. Harvey.

W. H. R. continued. After the letter, Harvey told me the persons were arrested who were concerned with me, and after some hesitation, [I] told Harvey I would disclose what I knew concerning it. Was taken before Judge Booth and after before Justice Tatlow. Related the circumstances. I pointed out Carson before Tatlow. Never saw Carson before Monday night. Devinney said as he was known did not wish to buy a trunk. I went and bought it of one Hamilton, brought it to his house, said to put my clothes. I put one piece of dimity and muslins in the trunk by Devinney's assistance. Was covered with a kind of bay colored hair. What Carson first took out was tied in a handkerchief. What we put in the stable was taken to Wilmington by me.

Charles Hamilton. Robinson came to my store in Wilmington and purchased a trunk to put some muslins in to send to Baltimore. He said next morning he had sent it with his clothes to Philadelphia.

Leach 446, 285, 2 Hawk.P.C. 609. *Fairsham's Case* produced by defendants' counsel to support their objection to giving evidence of what passed before the judge when no examination was taken in writing, and hearsay to corroborate the evidence of the accomplice. (Being no examination either by parol or in writing, the point waived.)

I afterwards went to Devinney's and found the trunk there, took it up to my brothers, found fourteen pieces muslin and one

of dimity, with a number of grass seeds, etc. Trunk and goods produced in court and examined.

Israel Purcy.

Forbes Newton. I boarded at James Devinney's house at this time. Robinson came to board at Devinney's house the Sunday before they were apprehended. Stayed till Monday. Went away and returned about the middle of the week. The family told me one of them had met with a brother [they] had not seen for five years, been on board a man of war, had made him a present of twelve pair hose and dozen shawls, money, etc. I replied a strange and lucky circumstance. This was Robinson. He came in, said had sold the stockings and shawls except one he presented to Mrs. Devinney, and said he wanted to buy a trunk. Did buy a new one, took it upstairs, to put his things in it, carried his things up. I went to bed after Robinson went out. Between that and daylight I heard someone at the door. Robinson came in to come to bed etc. About daybreak Robinson went down and brought up a large bundle, put it behind the bed. I got up and found it was a large blue bundle bound up with cords.

Cross-examined. On Monday evening and night Devinney was at home at 10 o'clock and past. I saw him in bed that night and in bed next morning. I am a tinman. Devinney keeps boarders in part for his living. In such houses it is not usual to examine boarders' bundles when they come in. Have lived there four or five weeks.

Alexander Haney. If one concerned in the packets, Moffett, Bond, Henderson, Chambers, Hollingsworth, and McDaniels is also concerned. By written articles—the counsel call for the articles—I became concerned in 1794. No written articles since the consolidation.

Thomas Bond. I have seen an original agreement. Mr. Sus and Chambers were authorized by the other partners to consolidate the two lines, and I believe entered into an article.

Dr. Alexander. A memorandum of agreement between the old and new line was entered into on the junction as to taking one boat out and putting one in, though I believe there was none but verbal as to the freight or general carrying business. On Monday, October 19, at night, we discharged the boat and put a quantity of dry goods in the store. I returned home five minutes before 1 o'clock. I returned to the wharf before sunrise, found the side door open. Called Captain Moor, found the goods broke open and laying about the floor. The seven bales were cut and one of muslin appeared deficient eighteen pieces etc. Recovered

sixteen pieces, which I can prove only by comparing them by one piece I kept. Also one shawl found by one. Fifty yards dimity taken, 25¾ yards returned. Found a tablecloth with some muslins in Passmore's stable.

### For Defendants.

*Vandyke* for prisoners. We expect to prove the defendants in a different place from that where the felony was committed, and also that Robinson was inconsistent.

William Armstrong. On Monday, October 19, the store was broke. I saw William Carson in my house, Monday evening about 11 o'clock, was so drunk had to be carried up to bed. I lighted James Dawson upstairs to put him to bed. I see him next morning in the bar room about 7 o'clock, had been intoxicated for several days before and after, don't think he could have been concerned from his situation. He and his wife separated and had his goods sold. Continued there a week or more after. Did not see Robinson in the house that night. Carson has been two and a half years about New Castle.

James Dawson. On Monday evening the store was broke. Know William Carson, see him at Armstrong's in the evening. I never missed him. Was much in liquor, had to help him upstairs to bed about 11 o'clock. I partly undressed and covered him in bed. About one and a half hours before day, went up into his room, found him there just as I left him.

Cross-examined. I crossed Christian Ferry about a half hour after sunrise, did not see Robinson or Taylor at Armstrong's that night.

William Seal. Have known James Devinney three years. Bore a good character when he left me about eighteen months ago (a tanner) nothing against him till this.

William Brown. Have known James Devinney, has supported a good character for four years.

Isaac Hendrickson. Know Devinney bears a good character till this affair.

Caleb P. Bennett. Robinson crossed the ferry between 9 and 10 o'clock the night before he was taken in Wilmington and returned again before day.

Hugh McBright, a ferryman. Robinson came to get over. He got some spirits. After he brought us over we drank it. Said he was going to New Castle. He returned, drank a little. Had a bundle, put it in the batteau, got me to help him up to Market

House, Wilmington. I put him over going to Wilmington in the afternoon.

Rebecca Story. I bought some shawls of a man like these shown of a man who said he came from Liverpool in the evening. Next morning he came with more goods. I did not purchase them.

Joseph Booth. Saw Carson about 9 o'clock Monday evening on the wharf.

James Barr. I saw Carson between 11 and 12 o'clock near McCalmont's house in Water Street the night of the robbery.

French McMullen, for the prosecution, applied the evidence.

*Broom.* Eden Pen.L. 691. 2 Hawk.P.C. 607, 608, 609. Evidence of an accomplice too slight to convict with other evidence.

*Vandyke.* If you should find the "fact," the owners of the goods not correctly stated in the indictment it is not good in law.

*G. Read.* Leach 412. *Durham v. Crowder.* Objection goes to credibility not the competency of an accomplice.

*Rodney.* It does not appear etc.

PER CURIAM. Provided the jury find the fact that Chambers was one of the copartners it will authorize the jury to acquit the defendants as their counsel contend.

Verdict, guilty.

And motion by defendants' counsel for new trial.

## JOSHUA JONES v. JOSEPH WAPLES.

Court of Common Pleas. Sussex. April, 1802.

*Rodney's Notes.*